UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DALE EVERHART,<br><br>      Plaintiff,<br>vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner<br> of the Social Security Administration,<br><br>      Defendant. | )<br>)<br>)<br>)  4:09-cv-00116-SEB-WGH<br>)<br>)<br>)<br>)<br>)<br>) |

**Entry Discussing Complaint for Judicial Review**

Dale Everhart ("Everhart") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Everhart applied for DIB on July 25, 2005, alleging an onset date of November 4, 2004. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on June 17, 2008. Everhart was present, accompanied by his attorney. Medical and other records were introduced into evidence. Everhart and a vocational expert testified. The ALJ denied Everhart's application on July 14, 2008. On August 20, 2009, the Appeals Council denied Everhart's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Everhart met the insured status requirements of the Act through December 31, 2010; (2) Everhart had not engaged in substantial gainful activity since November 4, 2004, the alleged onset date; (3) Everhart had the following severe impairments: chronic obstructive pulmonary disease, asbestosis, status post left lower extremity fracture, history of tonsillitis, and adjustment disorder with anxious mood; (4) Everhart did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Everhart had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §404.1567(b) except he was limited to less than moderate exposure to dust, fumes, gases, noxious odors, and particulate matter in the air and was further limited to jobs that were low stress, simple, routine, with 1-3 step duties, and he must also have the option to occasionally sit; (6) Everhart was unable to perform his past relevant work; (7) Everhart was born on August 12, 1954, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date; (8) Everhart had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Everhart was "not disabled," whether or not he had transferable job skills; and (10) considering Everhart's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Everhart had not been under a "disability" as defined in the Act from November 4, 2004, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

2

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Everhart had severe impairments consisting of chronic obstructive pulmonary disease, asbestosis, status post left lower extremity fracture, history of tonsillitis, and adjustment disorder with anxious mood, there were a significant number of jobs in the national economy that he could perform.  The ALJ determined that Everhart could perform light work, except he was limited to less than moderate exposure to dust, fumes, gases, noxious odors, and particulate matter in the air, he was further limited to jobs that were low stress, simple, routine, with 1-3 step duties, and he must also have the option to occasionally sit. (R. at 16).

Everhart asserts a single error in this case. He argues that the ALJ erred by failing to either incorporate in his RFC assessment the opinion of consulting examining physician Dr. Akaydin or explain why he rejected that opinion. In a report dated October 24, 2005, Dr. Akaydin stated, in relevant part:

> [Everhart] should be quite capable of performing most forms of at least mildly physically strenuous type work without any overt difficulty whatsoever but it would probably be in his best interest to do so in a very well climate controlled workplace environment essentially totally devoid of any potentially noxious airborne irritants of any kind (advised patient to quit all tobacco use ASAP even though he's only smoking 1-2 cigarette [sic] per day at present time).

(R. at 304).

At the hearing conducted on June 17, 2008, counsel asked the vocational expert to assume that the work environment in this case would have to be totally devoid of any potentially noxious, airborne irritants of any kind, and asked whether that would preclude all work. (R. at 518). The vocational expert responded:

> "Yes, yeah, that would require purified atmosphere and that'd be very difficult to accommodate in a work situation. There's, it'd have to be a really special situation."

*Id.*

3

The ALJ at that point stated, "He would have - - couldn't be around any smokers, could he?" *Id.*

Vocational expert: "No, sir." *Id.*

ALJ: "Like his wife. He couldn't be around himself, either, could he?" *Id.*

Vocational expert: "No, sir."

At that time, Everhart remarked, "She smokes still." (R. at 519).

In discussing Everhart's statements about his impairments, the ALJ noted that Everhart "clearly has ongoing respiratory problems as evidenced by findings of wheezing on examination, but results of diagnostic testing have never been impressive." (R. at 16). The ALJ discussed the fact that a CT scan of the chest showed only mild emphysematous changes, mild apical scarring and scattered small subpleural nodules, but no evidence of any fibrosis or reticular changes. *Id.* He further noted that of the two valid spirometry tests of record, one was normal and one showed only mild obstruction. *Id.* The ALJ stated that Everhart "alleges debilitating breathing problems yet continues to smoke." *Id.* "Respiratory treatment for the most part has remained conservative." *Id.*

The ALJ discussed the opinion evidence of record, noting that treating internist Dr. Alcorn stated that Everhart must avoid fumes, dust, temperature extremes and smoke. (R. at 17). The ALJ acknowledged that consultative examiner Dr. Akaydin stated that Everhart's respiratory condition limited him to a climate controlled environment free from noxious airborne irritants. *Id.* The other opinion of record was that of DDS physicians who stated that Everhart had no severe physical or mental impairment. *Id.* The ALJ rejected the opinion of the DDS because there was "a clear demonstration of breathing problems and to a lesser extent some problems with anxiety." *Id.* The ALJ concluded that the opinion of Dr. Akaydin was well supported by the record as a whole and he assigned it "great weight." *Id.* The ALJ rejected some of the lifting and standing restrictions noted by treating physician Dr. Alcorn, based on "the lack of remarkable findings on diagnostic testing." *Id.* The ALJ noted again that the "spirometry was unremarkable as was the CT scan" and that the findings on physical examination "were usually limited to 1+ rhonchi." *Id.* The ALJ concluded that "some limits on exertional activities are appropriate due to respiratory problems," and as a result he limited Everhart to light work. *Id.*

Everhart argues that the action must be remanded to the Commissioner because the ALJ failed to explain why he did not include in his RFC determination a restriction that any work environment would have to be totally devoid of potentially noxious airborne irritants of any kind, as stated by consulting physician Dr. Akaydin. It is true that the ALJ gave great weight to the opinion of Dr. Akaydin. Dr. Akaydin opined that "[a]side from some mild diminishment in overall general breath sounds/air exchange noted throughout all lung fields, [Everhart] appeared to be essentially fully intact and generally quite functional for the most part in an overall gross cognitive, physical, neurological and orthopedic sense without any other overt potentially limiting deficits of any kind being readily appreciated. . . . " (R. at 304). In addition to Dr. Akaydin's opinion about it being in Everhart's "best interest" to work in a climate controlled environment, he stated that Everhart "should be quite capable

4

of performing most forms of at least mildly physically strenuous type work without any overt difficulty whatsoever. . . ." *Id.* As noted, the ALJ limited Everhart to light exertional work, a finding that was consistent with Dr. Akaydin's opinion.

Everhart's contention that the ALJ failed to explain why he "rejected" Dr. Akaydin's opinion relative to environmental restrictions is not persuasive. The Commissioner asserts that Dr. Akaydin's opinion as to the environmental limitations did not mean that Everhart could *only* work in a special environment with purified air. The court agrees. Indeed, Dr. Akaydin was aware that Everhart and his wife lived in a home that was not devoid of smoke and airborne irritants. The optimal conditions suggested by Dr. Akaydin were that Everhart quit smoking altogether *and* work in a purified air environment. Dr. Akaydin's medical advice and recommendations in this context did not necessarily translate to a finding of Everhart's RFC.

An ALJ "need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004) (internal quotation omitted). The court can trace the ALJ's reasoning without having to arbitrarily fill in any gaps left by the ALJ. While discussing with the vocational expert the possible restriction of being in a "purified atmosphere," the ALJ noted that to satisfy such a requirement, Everhart would have to avoid being around any smokers, including himself and his wife. (R. at 518). Everhart testified at the hearing in June 2008 that although he had cut back from smoking a pack a day, he continued to smoke about six cigarettes per day. (R. at 490). That was more than what he reportedly smoked at the time he saw Dr. Akaydin three years earlier in October 2005. Although the ALJ remarked that Everhart's credibility was undermined by the fact that Everhart alleged debilitating breathing problems and yet continued to smoke, in his RFC determination he did limit Everhart to "less than moderate exposure to dust, fumes, gases, noxious odors, and particulate matter in the air." (R. at 16).

It would undoubtedly be "in [Everhart's] best interest" to work in an environment totally devoid of any airborne irritants, just as it would be, as advised by Dr. Akaydin, in Everhart's best interest to "quit all tobacco use ASAP." (R. at 304). It is clear from the ALJ's discussion of the evidence and from the transcript of the hearing, however, that he determined that it would not be appropriate for an applicant for disability to be restricted to work only in a special, purified atmosphere while at the same time the applicant smoked cigarettes and lived in a home with a wife who smoked.

The court finds that the ALJ satisfied his duty to articulate his reasons and build an accurate and logical bridge between the evidence and his conclusions. The ALJ's decision to limit Everhart to less than moderate exposure to dust, fumes, and gases is supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995) ("An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."). Moreover, there is no basis on which to believe that, if the decision were remanded, the ALJ would come to a different conclusion in this case. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative

law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000) ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.") (internal quotation and citation omitted).

As noted, the court's role in this case is not to attempt a *de novo* determination of Everhart's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence, including the opinion of Dr. Akaydin, to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation and citation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Everhart's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Everhart's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Everhart is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/02/2010

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana